NF

KC **FILED**

FEB - 3 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ERIC SMITH and GUILLERMINA YANONG,       )
                                          )
                    Plaintiffs,           )
                                          )
         v.                               )
                                          )
AMERIQUEST MORTGAGE COMPANY,              )
                                          )
                    Defendant.            )

**05C  0648**

*JUDGE ANDERSEN*

**JURY DEMANDED**

*MAGISTRATE JUDGE DENLOW*

## COMPLAINT

### INTRODUCTION

1.    Plaintiffs Eric Smith and Guillermina Yanong bring this action against a "subprime" mortgage lender to rescind mortgages for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

### JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (Truth in Lending Act). Defendant does business in the District and is deemed to reside here.

### PARTIES

3.    Plaintiffs own and reside in a home at 1844 South 60th Court, Cicero, Illinois.

4.    Defendant Ameriquest Mortgage Company ("Ameriquest") is a foreign corporation which maintains offices in and does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606. It is engaged in the business

1

of originating "subprime" mortgages and makes more than 26 loans per year.

## FACTS RELATING TO PLAINTIFFS

5.    On February 20, 2002, plaintiffs obtained a mortgage loan from Ameriquest secured by their home at 1844 South 60th Court, Cicero, Illinois.

6.    Plaintiffs needed and used the loan proceeds for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

7.    The loan was closed on February 20, 2002.

8.    On February 20, 2002, plaintiffs signed or received the following documents relating to the loan:

    a.    Note, Exhibit A;

    b.    Mortgage, Exhibit B;

    c.    A Truth in Lending disclosure statement, Exhibit C;

    d.    Two different notices of right to cancel, Exhibits D and E;

    e.    A settlement statement on form HUD-1A, Exhibit F.

## RIGHT TO RESCIND

9.    Because the transaction was secured by plaintiffs' home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23. Section 226.23 provides:

**(a) Consumer's right to rescind.**

**(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**

2

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) Exempt transactions. The right to rescind does not apply to the following:

(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

**(2) A credit plan in which a state agency is a creditor.**

## GROUND FOR RESCISSION

10.     The payment schedule is not fully and completely disclosed on Exhibit D.

11.     Exhibit F detracts from and obfuscates Exhibit E. Exhibit F suggests that the consumer has seven days to rescind under TILA, which is not the case. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees, or the procedural protections of §1635. It also provides for a different method of counting days and requires actual receipt of the notice by Ameriquest within the specified time.

12.     15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

## VIOLATIONS ALLEGED

13.     The failure to fully and completely disclose the payment schedule violates 15 U.S.C. §1638 and 12 C.F.R. §226.28.

14.     The provision of inconsistent and confusing notices of right to cancel violates 15 U.S.C. §1635 and 12 C.F.R. §226.23.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendant for:

a.     A judgment voiding plaintiffs' mortgage, capable of recordation in

4

the public records, and binding on defendant;

b.     Statutory damages for the underlying disclosure violation;

c.     If appropriate, statutory damages for failure to rescind;

d.     Attorney's fees, litigation expenses and costs.

e.     Such other or further relief as the Court deems appropriate.

_____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiffs demand trial by jury.

_____
Daniel A. Edelman

i:\case\ameriquest13.871\pleading\cmplt.wpd

5

# EXHIBIT A

Loan Number: 0034678318 - 7301

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

| | | |
|---|---|---|
| February 20, 2002 | Orange | California |
| [Date] | [City] | [State] |

1844 SOUTH 60TH COURT, CICERO, IL  60804
[Property Address]

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 161,100.00  (this amount is called "principal"), plus interest, to the order of the Lender.  The Lender is  Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid.  I will pay interest at a yearly rate of 6.999 %.  This interest rate I will pay may change in accordance with Section 4 of this Note.  The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS
#### (A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on     April 1, 2002 .   I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  My monthly payments will be applied to interest before principal.  If, on March 1, 2032    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my payments at:     505 South Main Street, STE. 6000  Orange, CA 92868

or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 1,071.70 .  This amount may change.

#### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
#### (A) Change Dates
The interest rate I will pay may change on the first day of  March, 2004 , and on that day every sixth month thereafter.  Each date on which my interest rate could change is called a "Change Date."
#### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.
#### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding five and one-half percentage point(s) (5.500 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.  The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

Initials: _____
02/20/2002 9:48:29 AM

Loan Number: 0034678318 - 7301

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **8.999 %** or **less than 6.999 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point(s) **(1.000 %)** from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater **12.999%** or less than **6.999%** .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(5) PREPAYMENT PRIVILEGE**

I may prepay all or a portion of the principal balance of this Note in accordance with the terms of this Section. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Prepayment Made Three (3) year(s) After the Date of this Note**

If I make a prepayment commencing on or after the Three (3) year anniversary of the date of this Note, I may make that prepayment, in full or in part, without the imposition of a prepayment charge by the Lender.

**(B) Prepayment Made Within Three (3) year(s) of the Date of this Note**

I agree to pay Lender a prepayment charge if I make a prepayment before the Three (3) year(s) anniversary of the date of this Note, whether voluntarily or involuntarily, and the aggregate amount of the prepayment I am currently making, plus all prepayments made during the immediately preceding 12-month period, exceeds twenty percent (20%) of the original principal balance of this Note. The amount of the prepayment charge will equal six (6) months interest, at the rate then in effect on this Note, based upon the aggregate amount of: (i) the principal balance prepaid on this Note during that 12-month period; plus (ii) the principal balance prepaid as a result of current prepayment.

**(C) Application of Funds**

I agree that when I indicate in writing that I am making a voluntary prepayment, the Lender shall apply funds it receives first to pay any prepayment charge and next in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(D) Monthly Payments**

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and the Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **6.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time which I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Initials: _Ugy_

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12. GOVERNING LAW PROVISION**

This Note and the related Security Interest are governed by the Alternative Mortgage Transaction Parity Act of 1982, 12 USC §3802 et. seq., and, to the extend not inconsistent therewith, Federal and State law applicable to the jurisdiction of the Property.

**Oral agreements, promises or commitments to lend money, extend credit, or forebear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ 1/20/02 (Seal)
BORROWER  GUILLERMINA U YANONG

_____ (Seal)
BORROWER

_____ (Seal)
BORROWER

_____ (Seal)
BORROWER

# EXHIBIT B

Return To:

Ameriquest Mortgage Company
P.O. Box 11507
Santa Ana, CA 92711

Prepared By:Ameriquest Mortgage Company

Sunita Balantrapu
4415 W. Harrison St., #
334,Hillside, IL 60162

——————— [Space Above This Line For Recording Data] ———————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated**February 20, 2002**
together with all Riders to this document.
(B) "Borrower" is GUILLERMINA U YANONG AND ERIC SMITH, AS JOINT TENANTS

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Ameriquest Mortgage Company

Lender is a Corporation
organized and existing under the laws of Delaware

0034678318

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3014  1/01

-6(IL) (0005)
Page 1 of 15          Initials:

VMP MORTGAGE FORMS - (800)521-7291

02/20/2002 9:48:29 AM

Lender's address is **1100 Town and Country Rd, Ste 200
Orange, CA 92868**

Lender is the mortgage under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated **February 20, 2002**

The Note states that Borrower owes Lender **one hundred sixty-one thousand one hundred
and 00/100**
Dollars

(U.S. **$161,100.00**                    ) plus interest. Borrower has promised to pay this debt in regular Periodic

Payments and to pay the debt in full not later than **March 1, 2032**

**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property located in the
County                                                [Type of Recording Jurisdiction]
of COOK                                      [Name of Recording Jurisdiction]:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 16-20-314-033                which currently has the address of
1844 SOUTH 60TH COURT                                                    [Street]
CICERO                                        [City], Illinois 60804     [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

Initials: _____                                                    0034678328

-6(IL) (0005)                Page 3 of 15   02/20/2002 9:48:29 AM   Form 3014   1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

0034678319

Initials _____

-6(IL) (0005)    Page 4 of 15    02/20/2002 9:48:29    Form 3014    7/01

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials:

0034678318

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

-6(IL) (0005)　　　　　　　　　　　　Page 9 of 15　　Initials: _____　　　0034678318

02/20/2002  9:48:29　　Form 3014  1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                        GUILLERMINA U YANONG              -Borrower

_____        _____ (Seal)
                                        ERIC   SMITH                      -Borrower

_____ (Seal)  _____ (Seal)
                       -Borrower                                          -Borrower

_____ (Seal)  _____ (Seal)
                       -Borrower                                          -Borrower

_____ (Seal)  _____ (Seal)
                       -Borrower                                          -Borrower

0034678318

-6(IL) (0005)                           Page 14 of 15  02/20/2002 9:48:29 AM  Form 3014  1/01

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 20th day of February , 2002   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

1844 SOUTH 60TH COURT, CICERO, IL  60804
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of   6.999 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   (A) Change Dates
The interest rate I will pay may change on the first day of  March, 2004  , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

   (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials _____

Loan Number:  0034678318 - 7301

02/20/2002 9:48:20 AM

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **five and one-half** percentage points ( **5.500 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **8.999% or less than 6.999%.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one( **1.000 %**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.999% or less than **6.999%.**

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials _____

Loan Number:  0034678318 - 7301

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
Borrower GUILLERMINA U YANONG                   Borrower   ERIC   SMITH

_____ (Seal)        _____ (Seal)
Borrower                                        Borrower

Loan Number: 0034678318 - 7301

610-3 (Rev 1/01)                      Page 3 of 3

02/20/2002 9:46:29 AM

# EXHIBIT C

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

[ ] Preliminary      [X] Final

LENDER: Ameriquest Mortgage Company
4415 W. Harrison St., # 334
Hillside, IL 60162
(708)449-7073

Borrowers: GUILLERMINA U YANONG

Type of Loan: ADJUSTABLE RATE
Date: February 20, 2002

Address:      1844 SOUTH 60TH COURT
City/State/Zip:   CICERO, IL 60804

Loan Number: 0034678318 - 7301

Property:      1844 SOUTH 60TH COURT, CICERO, IL 60804

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.900 % | $ 250,007.26 | $ 153,460.43 | $ 403,467.69 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 24 | $1,071.70 | 04/01/2002 | | | |
| 335 | $1,124.25 | 04/01/2004 | | | |
| 1 | $1,123.14 | 03/01/2032 | | | |

**VARIABLE RATE FEATURE:**
[X] Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 1844 SOUTH 60TH COURT, CICERO, IL 60804

**ASSUMPTION:** Someone buying this property
[X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:** You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

**LATE CHARGES:** If a payment is late, you will be charged 6.000% of the overdue payment .

**PREPAYMENT:** If you pay off your loan early, you
[X] may    [ ] will not    have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure

Borrower GUILLERMINA U YANONG          2/20/02 / Date

Borrower   ERIC SMITH          2/20/02 / Date

Borrower _____ Date          Borrower _____ Date

TIL1 (Rev. 7/01)

**Borrower Copy**

02/20/2002 9:48:29 AM

# EXHIBIT D

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:  February 20, 2002
LOAN NO.:  0034678318 - 7301
TYPE:  ADJUSTABLE RATE

BORROWER(S): GUILLERMINA U YANONG

ADDRESS:      1844 SOUTH 60TH COURT
CITY/STATE/ZIP:   CICERO, IL 60804

PROPERTY:  1844 SOUTH 60TH COURT
               CICERO,  IL  60804

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

> **ENTER DOCUMENT SIGNING DATE**
> 02 | 20 | 2002                                    ; or

2.   The date you received your Truth in Lending disclosures; or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

### HOW TO CANCEL
If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**               ATTN:  **FUNDING**
**1100 Town and Country Rd, Suite 200**        PHONE: **(714) 541-9960**
**Orange, California 92868**                    FAX:      **(714) 245-0857**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

> **ENTER FINAL DATE TO CANCEL**
> 02 | 23 | 2002

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____                  _____
SIGNATURE                                              DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.



_____  2/20/02        _____  2/20/0
BORROWER/OWNER GUILLERMINA U YANONG  / Date      BORROWER/OWNER   ERIC   SMITH      / Date

_____                  _____
BORROWER/OWNER            Date              BORROWER/OWNER            Date

1004-NHC (Rev 5/99)                   **LENDER COPY**

# NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:  February 20, 2002
LOAN NO.:   0034678318 - 7301
TYPE:   ADJUSTABLE RATE

BORROWER(S): GUILLERMINA U YANONG

ADDRESS:        1844 SOUTH 60TH COURT
CITY/STATE/ZIP:   CICERO, IL 60804

PROPERTY:   1844 SOUTH 60TH COURT
            CICERO,  IL  60804

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is



ENTER DOCUMENT SIGNING DATE

02 20 2002
; or

2.   The date you received your Truth in Lending disclosures; or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company
1100 Town and Country Rd, Suite 200
Orange, California 92868

ATTN:  FUNDING
PHONE: (714) 541-9960
FAX:  "    (714) 245-0857

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of



ENTER FINAL DATE TO CANCEL

02 23 2002

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____              _____
SIGNATURE                                      DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL, and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____   02/20/02     _____  2/20/0'
BORROWER/OWNER GUILLERMINA U YANONG    Date     BORROWER/OWNER  ERIC SMITH    Date

_____   _____     _____   _____
BORROWER/OWNER                       Date        BORROWER/OWNER              Date

1064-NRC (Rev 6/99)

**BORROWER COPY**

## NOTICE OF RIGHT TO CANCEL

LENDER:    Ameriquest Mortgage Company

DATE:  February 20, 2002
LOAN NO.:  0034678318 - 7301
TYPE:  ADJUSTABLE RATE

BORROWER(S): GUILLERMINA U YANONG

ADDRESS:    1844 SOUTH 60TH COURT
CITY/STATE/ZIP:    CICERO, IL 60804

PROPERTY:  1844 SOUTH 60TH COURT
CICERO,  IL  60804

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

   **ENTER DOCUMENT SIGNING DATE**
   02 | 20 | 2002    ; or

2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1100 Town and Country Rd, Suite 200**
**Orange, California 92868**

ATTN:  **FUNDING**
PHONE: **(714) 541-9960**
FAX:  **(714) 245-0857**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

**ENTER FINAL DATE TO CANCEL**
02 | 23 | 2002

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

SIGNATURE _____     DATE _____

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.



BORROWER/OWNER GUILLERMINA U YANONG          Date
BORROWER/OWNER  ERIC  SMITH          Date

BORROWER/OWNER          Date          BORROWER/OWNER          Date

1064-NRC (Rev 6/99)

## BORROWER COPY

# EXHIBIT E

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0034678318 - 7301                    Borrower(s): GUILLERMINA U YANONG

Date: February 20, 2002

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

        Ameriquest Mortgage Company
        1100 Town and Country Rd, Suite 200 Orange, California 92868

        ATTN: Funding Department
        Phone: (714) 541-9960
        Fax: (714) 245-0857

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

Borrower/Owner  GUILLERMINA U YANONG          Date  2/20/02

Borrower/Owner  ERIC SMITH          Date  2/20/02

Borrower/Owner          Date

Borrower/Owner          Date

---

## REQUEST TO CANCEL

I/We want to cancel loan # _____

Borrower/Owner Signature _____     Date _____

850 (10/00)

**BORROWER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0034678318 - 7301          Borrower(s): GUILLERMINA U YANONG

Date:  February 20, 2002

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make.  To give you more' time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends.  You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan.  The written statement must be signed and dated by any one borrower.  Your request must be delivered to:

> Ameriquest Mortgage Company
> 1100 Town and Country Rd, Suite 200 Orange, California 92868
>
> ATTN: Funding Department
> Phone: (714) 541-9960
> Fax: (714) 245-0857

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

Borrower/Owner  GUILLERMINA U YANONG          Date  2/20/02

Borrower/Owner  ERIC SMITH          Date  2/20/02

Borrower/Owner          Date

Borrower/Owner          Date

## REQUEST TO CANCEL

I/We want to cancel loan #_____

Borrower/Owner Signature          Date

820 (10/00)          **BORROWER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0034678318 - 7301          Borrower(s): GUILLERMINA U YANONG

Date:  February 20, 2002

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make.  To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.**  No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends.  You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan.  The written statement must be signed and dated by any one borrower.  Your request must be delivered to:           Ameriquest Mortgage Company
1100 Town and Country Rd, Suite 200 Orange, California 92868

ATTN: Funding Department
Phone: (714) 541-9960
Fax: (714) 245-0857

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

| | |
|---|---|
| _Borrower/Owner_ GUILLERMINA U YANONG | Date 2/20/02 |
| _Borrower/Owner_ ERIC SMITH | Date 2/20/02 |
| _Borrower/Owner_ | Date |
| _Borrower/Owner_ | Date |

---

## REQUEST TO CANCEL

I/We want to cancel loan #_____

_Borrower/Owner Signature_ _____     Date _____

830 (1000)                    **LENDER COPY**

# EXHIBIT F

**Settlement Statement**
U.S. Department of Housing and Urban Development
OMB Approval No. 2502-0491
**WLI**

**Transactions without Sellers**

| Name & Address of Borrower:<br>GUILLERMINA U YANONG<br><br>1844 SOUTH 60TH COURT    CICERO,IL 60804 | *DEDUCTED POINTS IN 2002* | Name & Address of Lender:<br>Ameriquest Mortgage Company<br>4415 W. Harrison St., # 334<br>Hillside, IL 60162 |
|---|---|---|

| Property Location: (if different from above) | | Settlement Agent: |
|---|---|---|

1844 SOUTH 60TH COURT, CICERO, IL  60804

Place of Settlement:

**L.    Settlement Charges**

| Loan Number:<br>0034676318 - 7301 | Settlement Date: |
|---|---|

| **800.  Items Payable in Connection with Loan** | | **M.    Disbursement to Others** | |
|---|---|---|---|
| 801.  Loan origination fee      % to | | | |
| 802.  Loan discount  3.890  % to  Ameriquest Mortgage Company | $6,266.79 | 1501.<br>BANK ONE                                              (W) | $8,933.00 |
| 803.  Appraisal fee to  THE EAGLE APPRAISAL GROUP | $325.00 | | |
| 804.  Credit report to | | 1502.<br>BANK ONE                                              (W) | $1,047.00 |
| 805.  Inspection fee to | | | |
| 806. | | 1503.<br>BANK ONE                                              (W) | $17,547.07 |
| 807. | | | |
| 808.  Yield Spread Premium to | | 1504.<br>FUSA BANK                                            (W) | $6,979.00 |
| 809. | | | |
| 810.  Tax Related Service Fee to  Ameriquest Mortgage | $70.00 | 1505.<br>FUSA NA                                                (W) | $14,742.00 |
| 811.  Flood Search Fee to  Ameriquest Mortgage Company | $16.00 | | |
| 812.  Lenders Processing Fee to  Ameriquest Mortgage | $526.00 | 1506.<br>WASHMUHOM                                       (W) | $98,467.44 |
| 813.Admin to Ameriquest Mortgage Company | $239.00 | | |
| 814.  Doc. Prep. Fee to | | 1507. | |
| 815.  Credit Report Fee to | | | |
| 816.  Origination Fee      % to | | 1508. | |
| 817.  Application Fee to  Ameriquest Mortgage Company | $360.00 | | |
| 818.  Underwriting Fee to | | 1509. | |
| 819.  Service Provider Fee to | | | |
| 820.  Processing Fee  to | | 1510. | |
| 821.  Underwriting Fee to | | | |
| 822.  Appraisal Fee to | | 1511. | |
| **900.  Items Required by Lender to be Paid in Advance** | | | |
| 901.  Interest from  02/27/2002  to  03/01/2002  @  $30.89  per day | $61.78 | 1512. | |
| 902.  Mortgage insurance premium for              months to | | | |
| 903.  Hazard insurance premium  to | | 1513. | |
| 904.  Flood Insurance premium  to | | | |
| **1000. Reserves Deposited with Lender** | | 1514. | |
| 1001. Hazard Insurance  12  months @ $ 49.08  per month | $588.96 | | |
| 1002. Mortgage insurance      months @ $      per month | | 1515. | |
| 1003. City property taxes      months @ $      per month | | | |
| 1004. County prop. taxes  2  months @ $  293.47  per month | $586.94 | | |
| 1005. Annual assess.      months @ $      per month | | 1520. TOTAL DISBURSED (enter on line 1603) | $148,716.41 |
| 1006. Flood      months @ $      per month | | | |
| 1007.                months @ $              per month | | | |
| 1008. | | | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee to | | | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to  NATIONS TITLE AGENCY OF | $150.00 | | |
| 1104. Title insurance binder to | | Total Wire:     $152,284.53 | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to | | | |
| 1108. Title insurance to  NATIONS TITLE AGENCY OF | $600.00 | | |
| 1109. Lender's coverage          $ | | | |
| 1110. Owner's coverage            $ | | | |
| 1111. Settlement/Disbursement fee to | | | |
| 1112. Escrow Fee to | | | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Recording fees | $50.00 | | |
| 1202. City/county tax/stamps | | **N.  NET SETTLEMENT** | |
| 1203. State tax/ stamps | | | |
| 1204. State specific fee | | | |
| 1205. State specific fee | | 1600. Loan Amount | 161,100.00 |
| **1300. Additional Settlement Charges** | | | |
| 1301. Demand to | | 1601. Plus Cash/Check from Borrower | |
| 1302. Pest Inspection to | | | |
| 1303. Survey Fee | | 1602. Minus Total Settlement Charges<br>(line 1400) | $9,940.47 |
| 1304. | | | |
| 1305. Reconveyance Fee to | | 1603. Minus Total Disbursements to Others<br>(line 1520) | $148,716.41 |
| 1306. | | | |
| 1307. | | 1604. Equals Disbursements to Borrower<br>(after expiration of any applicable rescission<br>period) | $2,443.12 |
| 1308. Courier Fee | | | |
| **1400. Total Settlement Charges (enter on line 1602)** | $9,940.47 | | |

Borrower(s) Signature(s):

X

| Approved for Funding By: | Approved: | Branch:  Hillside, IL 60162 |
|---|---|---|